WARNER, J.
In challenging his conviction and sentences for first degree murder and other crimes, appellant Lopez raises three issues: 1) whether the trial court erred in failing to give an independent act instruction; 2) whether the court erred in admitting a note from appellant to a fellow prisoner; and 3) whether his two convictions for robbery with a firearm violate double jeopardy. Because there was evidence that appellant intended to participate in the robbery, the court did not err in refusing to give the independent act instruction. The court properly found that the state presented a prima facie case of authenticity of the note, which was thus admissible. We do, however, conclude that the two convictions for robbery with a firearm arise from a single forcible taking, and one must be vacated.
Appellant was charged with first degree murder of Angel Pulido during the perpetration or attempt to perpetrate a burglary or robbery; robbery with a firearm of currency from Angel Pulido; robbery with a firearm of currency from Pulido’s girlfriend; burglary of a dwelling with an assault or battery while armed with a dangerous weapon; cruelty to animals by discharging a firearm resulting in a cruel death to an animal; and, grand theft of a motor vehicle. These charges arose from a violent robbery at the home of Pulido.
The trial testimony revealed that Lopez and Brad Boswell were at the home of Boswell’s cousin, Justin Jenkins. Jenkins testified that a friend drove them to Daniel *303 Solomon’s house. Jenkins heard them talking about doing “a lick” which could mean either selling drugs or committing a robbery. He saw Solomon drop some bullets into Boswell’s hand, and he saw Boswell, Lopez, and Solomon drive off in Solomon’s car.
A detective testified to the admissions that Lopez made in a statement to officers after having been apprehended. Lopez said that he accompanied Boswell to the home of Angel Pulido. Pulido answered the door, and Lopez asked him if he had any cocaine. Lopez had a tire iron and an unloaded gun. Pulido tried to shut the door but Boswell put a gun to Pulido’s stomach and fatally shot him. Boswell then shot and killed Pulido’s pit bull. Inside, Boswell demanded money, drugs, and guns from Pulido’s girlfriend. She went into the closet and gave Boswell a container with loose change. Lopez and Boswell went out the back door where they were supposed to meet Solomon in his car, but he wasn’t there. They ran back to the house, and Lopez used the tire iron to break the window. The victim’s girlfriend was on the phone calling police. Boswell took the phone from her. He then took the keys to two vehicles and drove off in the girlfriend’s Dodge Durango. As he drove, Boswell threw the gun he used to shoot the victim out the driver’s side window into a ditch near some woods. Boswell drove to a house where he tried to get a ear from a Hispanic man who lived there. Lopez told him in Spanish that Boswell wanted the keys to his car. He didn’t get the car, and they left.
To another officer, Lopez admitted that Boswell told him that they were going to do a “lick” or a robbery. He also admitted that Boswell shot Pulido. Lopez had a gun which Boswell told him to point at Pulido, which he did. Lopez’s gun was inoperable.
The girlfriend testified that she was asleep when she awakened to a loud sound. Their pit bull came into the bedroom and fell off the bed dead. She looked out the bedroom door and saw a boy with a bandanna around his face and a gun in his hand. Another man came into the bedroom and demanded drugs and money. She told him she didn’t know what he was talking about. She remembered she had a bucket in the closet where they put loose change, and she got it and gave it to them. Then they ran out the back door and she locked it. She saw Pulido and called 911. She was on the phone with 911 when the two came back and broke into the back door of the house. The man demanded the keys to her vehicle. She gave them to him, and the two men went through the front door and left in her Dodge Durango.
When apprehended, Lopez had a bandanna which matched the description of the one the girlfriend saw on the perpetrators. In the Durango, officers recovered another bandanna and a gun, but not the murder weapon. Boswell also had the keys to the Durango in his pocket when the officers searched him.
Also testifying at trial was an Okeechobee County Jail inmate, Anthony Brazell, who befriended Lopez. Their cells were next to each other. The two men had talked with each other but were afraid people were listening, so Lopez wrote the notes about the crimes that Lopez had committed. In them, Lopez told Brazell that he should have had a gun with bullets so that he could have killed the girlfriend and eliminated any witnesses. Brazell testified that Lopez had passed two notes to him. He could hear Lopez’s voice but couldn’t see him. He identified a tattoo on Lopez’s arm which he saw as Lopez passed the notes. Brazell kept the notes and turned them over to police. The state had an expert analyze the pages for finger *304 prints. One fingerprint of Lopez was identified on the first page. Other prints belonged to the inmate. Brazell received a favorable plea deal on the charges against him after delivering the notes to the state. The trial court admitted the notes over Lopez’s objection that there was no proof that they came from him.
Based upon the evidence presented, the jury found Lopez guilty of all crimes charged. He was subsequently sentenced to life on the first four counts (murder, two counts of robbery with a firearm, and burglary with an assault) and five years concurrent on the last two (cruelty to an animal and grand theft). He now appeals.
In his first issue, Lopez claims that the trial court abused its discretion in refusing to give an instruction on independent acts. He had requested the standard jury instruction, but the trial court denied the request, ruling that there was no evi-dentiary support for the instruction. The independent act doctrine arises when one co-felon, who previously participated in a common plan, does not participate in acts committed by his co-felon, which fall outside the common design of the original collaboration. Dell v. State, 661 So.2d 1305, 1306 (Fla. 3d DCA 1995). A ruling on a request for a jury instruction is reviewed for abuse of discretion. Zama v. State, 54 So.3d 1075, 1077 (Fla. 4th DCA 2011).
Lopez cites Ray v. State, 755 So.2d 604 (Fla.2000), in support of his position. However, we find that it supports the trial court’s denial of the requested instruction. In Ray, Ray and Hall robbed a liquor store. While escaping, they experienced car trouble and were fixing their car when a police officer arrived. A gun battle ensued in which the officer was killed. Ray contended at trial that he did not pull the trigger, and the killing did not occur during the commission of the robbery or escaping from it. The supreme court rejected Ray’s contention that the trial court erred in failing to give the independent act instruction. Because both Ray and Hall were participants in the robbery and the murder resulted from forces they set in motion, no independent act instruction was warranted. Even if Hall pulled the trigger, Ray was culpable as a co-felon because the murder was committed in the course of a felony.
Here, Lopez knew of and agreed to commit the robbery. The murder occurred in furtherance of the robbery, and thus the independent act instruction was not applicable. Id. See also Wagner v. State, 921 So.2d 38, 41 (Fla. 4th DCA 2006) (independent act instruction should not be given where the evidence shows the murder was committed in furtherance of the felonious scheme). In fact, there was no evidence to support Lopez’s claim that the murder was not in furtherance of the plan to rob Pulido. There is no merit to this issue.
Lopez next contends that the court erred in admitting the notes to Bra-zell, the inmate at the jail, where there were insufficient indicia of reliability that the notes were written by Lopez. We disagree. A trial court’s decision to admit evidence is reviewed using the abuse of discretion standard of review, as limited by the rules of evidence. See Johnson v. State, 40 So.3d 883, 886 (Fla. 4th DCA 2010). Here the trial court acted well within its discretion.
 Evidence must be authenticated prior to its admission into evidence. § 90.901, Fla. Stat. (“Authentication or identification of evidence is required as a condition precedent to its admissibility. The requirements of this section are satisfied by evidence sufficient to support a finding that the matter in question is what *305 its proponent claims.”). Authentication requires only a prima facie case to support admission, and the proponent may provide both direct and circumstantial evidence to satisfy that burden. See State v. Love, 691 So.2d 620, 621 (Fla. 5th DCA 1997). “[T]he final decision regarding genuineness is within the province of the jury and ... the trial court’s responsibility must end with a determination whether the facts support a finding of authenticity.” Id. at 622.
Here, the state relied on both direct and circumstantial evidence to support a prima facie case of admissibility. Brazell testified that Lopez talked with him and decided to communicate in writing regarding the crime. Brazell and Lopez shared adjoining cells, and Brazell recognized the tattoo on Lopez’s arm when he received the note. The notes contained details of the crime that a perpetrator would have known, and Lopez’s fingerprint was on one page of the note. We conclude that the trial court had sufficient evidence for a prima facie case of authenticity. The issue was properly submitted to the jury.
Finally, Lopez contends that the two convictions and sentences for robbery with a firearm violate double jeopardy. The state charged Lopez with robbery of currency. One count charged him with the taking from Pulido, and the other count charged the taking of the same money from the girlfriend. The facts show that only one forceful taking occurred, namely the taking of the money from the girlfriend. Under these circumstances, double jeopardy principles require that one of the convictions for robbery be vacated. See Hussain v. State, 67 So.3d 307, 308-09 (Fla. 4th DCA 2011) (double jeopardy violated where defendant convicted of robbery of two store managers where only one taking occurred); Lundy v. State, 614 So.2d 674 (Fla. 4th DCA 1993) (where defendant pointed gun at both dining room supervisor and assistant manager but took money only from one safe, convictions for robbery of both supervisor and manager violated double jeopardy); Taylor v. State, 589 So.2d 997, 998-99 (Fla. 1st DCA 1991) (forceful taking of money from cash register permits only one conviction for robbery even though two employees are placed in fear), rev’d on other grounds, 608 So.2d 804 (Fla.1992).
For the foregoing reasons we affirm appellant’s convictions and sentences, except on remand we direct that at least one conviction for robbery be vacated.
POLEN and DAMOORGIAN, JJ„ concur.