DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ANTHONY CRUZ,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-1408

[ May 20, 2015 ]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Ilona M. Holmes, Judge; L.T. Case No. 09004601CF10A.

Carey Haughwout, Public Defender, and Gary Lee Caldwell, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Jeanine Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.

TAYLOR, J.

Anthony Cruz was convicted of manslaughter with a weapon and attempted second degree murder with a weapon. In this appeal from his judgments and sentences, he argues that the trial court erred in: (1) denying his motion for judgment of acquittal because the state failed to prove beyond a reasonable doubt that he did not act in self–defense; (2) permitting the state to read to the jury, in its case-in-chief, his testimony from the Stand Your Ground hearing; (3) allowing the state to use his Stand Your Ground testimony without conducting a *Richardson* inquiry[1]; (4) instructing the jury on self-defense; and (5) imposing habitual offender sentences without jury findings of the necessary predicate facts. We affirm on all issues.

*Factual Background*

Appellant was charged with manslaughter with a weapon and attempted second-degree murder with a weapon. The charges arose from

---

[1] We find no reversible error on this issue and affirm without further comment.

a fight involving several men who worked together and lived with the father of one of the victims, Carlos "Carlitos" Gonzalez, Jr. The fight erupted outside their apartment late one night after they had been drinking throughout the afternoon and evening. Appellant stabbed both Carlitos and Jose "Rubi" Mendez, killing Carlitos and wounding Rubi. The state's key evidence at trial consisted of appellant's statement to police, his testimony at a pre-trial Stand Your Ground hearing, and the testimony of a witness, Miguel Sosa, who observed much of the fight but was not present when the stabbings occurred.[2]

On the night of the incident, when Sosa saw appellant choking Carlitos, Sosa and Rubi tried to pull appellant off, but he would not let go. Carlitos was on the floor and appellant was on top of him. Sosa then grabbed appellant by the throat and hit him because he would not let Carlitos go. Sosa and Rubi were hitting appellant, and appellant eventually let go of Carlitos.

Sosa testified that appellant later went outside and told him that he was going to kill him. Appellant took out a knife. Sosa ran away and told Carlitos to tell his father, Carlos, Sr., that appellant wanted to kill him. Appellant followed Sosa, who grabbed a rock. Appellant stopped following him and went into the house. The next time Sosa saw Carlitos and Rubi, they had stab wounds. Sosa did not see them get stabbed.

Carlitos's father, Carlos, Sr., testified that his son came upstairs, looking pale from a stab wound next to his heart, and said, "Look, Daddy, what Tony [appellant] did to me." Shortly thereafter, Carlitos died of his injury.

Appellant left the scene after he heard someone say "we need an ambulance." A few hours after the stabbings, the police found appellant walking down the street. Appellant later told the police that he left because "[a]ll of them were looking for me to beat me up."

Appellant claimed self-defense, maintaining that he defended himself against a fierce attack by Carlitos, Sosa, and Rubi with their fists, bottles, and other heavy objects. Appellant claimed that Rubi started the fight. Appellant said that the fight was "three to one" and that the three other men smashed his head against a brick wall. Appellant's blood was found on the brick wall, and a CSI officer testified that the blood pattern was an impact pattern.

---

[2] Rubi was unavailable to testify at trial.

Most of the facts supporting appellant's self-defense claim were elicited in the state's case-in-chief, when the state introduced appellant's statement to the police and his pre-trial Stand Your Ground testimony. There were portions of appellant's pre-trial statements, however, that were not beneficial to the defense. Appellant gave inconsistent statements regarding key details in the case. He also made incriminating statements that undermined his self-defense claim.

After the state rested its case, the defense called two witnesses who corroborated that three men were beating appellant. But those witnesses did not see the stabbings or how the fight started.

The trial court denied appellant's motion for judgment of acquittal. The jury found appellant guilty as charged on each count, and the trial court imposed concurrent thirty-year habitual offender sentences on those counts. This appeal followed.

*Denial of Judgment of Acquittal*

On appeal, appellant first argues that the state failed to present competent substantial evidence disproving the theory that he acted in self-defense. The state responds that it produced evidence which contradicted appellant's claim of self-defense and was sufficient to send the case to the jury. We agree with the state and affirm.

A *de novo* standard of review applies to the denial of a motion for judgment of acquittal. *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002). In moving for a judgment of acquittal, a defendant admits the facts in evidence and every conclusion favorable to the state that may be reasonably inferred from the evidence. *Turner v. State*, 29 So. 3d 361, 364 (Fla. 4th DCA 2010). A court should grant a motion for judgment of acquittal only if "the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law." *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974). "If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." *Pagan*, 830 So. 2d at 803 (citations omitted).

"While the defendant may have the burden of going forward with evidence of self-defense, the burden of proving guilt beyond a reasonable doubt never shifts from the State, and this standard broadly includes the requirement that the State prove that the defendant did not act in self-defense beyond a reasonable doubt." *Brown v. State*, 454 So. 2d 596, 598

3

(Fla. 5th DCA 1984).

When the state's evidence is legally insufficient to rebut a prima facie case establishing self-defense, the trial court must enter a judgment of acquittal. *See Fowler v. State*, 921 So. 2d 708, 711-12 (Fla. 2d DCA 2006) (the state's evidence failed to rebut the defendant's testimony that the victim pulled a gun on him to rob him, and that he grabbed the gun and shot the victim in self-defense; no eyewitnesses saw the shooting or the events preceding it, and the defendant's panicked actions after the shooting—including hiding the gun—did not rebut his claim of self-defense); *Sneed v. State*, 580 So. 2d 169, 170-71 (Fla. 4th DCA 1991) (the state failed to rebut the defendant's testimony that he shot the victim in self-defense during a struggle in which "the victim carried himself as if holding a knife and rushed toward him grabbing the rifle"; the state's case "not only failed to rebut appellant's allegation of self-defense, but corroborated a majority of appellant's testimony"); *Fowler v. State*, 492 So. 2d 1344, 1349-52 (Fla. 1st DCA 1986) (reversing murder conviction where the defendant's hypothesis that "the shooting was purely accidental and in self-defense" had not been overcome; the defendant testified that he shot the victim with the victim's gun during a struggle that took place after the victim told the defendant he was going to have to "play the role of a woman," and the physical evidence—including the path of the bullet—corroborated the defendant's testimony); *Diaz v. State*, 387 So. 2d 978, 979-80 (Fla. 3d DCA 1980) (reversing manslaughter conviction where the state "presented no evidence to rebut the defendant's direct testimony that he acted in self defense nor was it able to diminish his testimony on cross-examination"; the defendant testified that he drew his weapon and accidentally fired at the victim after the victim threatened to shoot him "while apparently reaching in his pocket for a weapon").

A defendant's inconsistent statements can, however, "constitute grounds upon which a trier of fact may reject the defendant's reasonable hypothesis of innocence." *Carranza v. State*, 985 So. 2d 1199, 1203 (Fla. 4th DCA 2008). Thus, a motion for judgment of acquittal should be denied where a jury could reasonably infer guilt and reject the defendant's explanation of self-defense, either because the defendant gave false, inconsistent, or incriminating statements, or because a common sense view of the circumstantial evidence would allow the jury to reject the defendant's story as unbelievable. *See Romero v. State*, 901 So. 2d 260, 265-66 (Fla. 4th DCA 2005) (holding that the State presented sufficient evidence to rebut the defendant's hypothesis that he shot and killed only one of the victims, and that he did so in self-defense after watching that victim shoot and kill the other victim; the defendant admitted that he shot one of the victims and that "he did not have to do so," there were

4

inconsistencies in defendant's versions of events over time, and the defendant left the scene, hid the gun, and lied to the police); *Hampton v. State*, 549 So. 2d 1059, 1060-61 (Fla. 4th DCA 1989) (holding that "there was competent evidence from which the jury could reasonably infer guilt and reject the appellant's explanation" of how the shooting of his girlfriend occurred, where the defendant claimed that his girlfriend initially pulled out the gun and that it fired in a subsequent struggle, but the defendant gave differing explanations in the course of the investigation, and "also made several statements indicating a lack of remorse, evidencing feelings of hostility toward the victim, and that he expected to be charged with the shooting").

In this case, there was competent evidence from which the jury could reasonably infer guilt and reject appellant's explanation of self-defense. Viewed in the light most favorable to the state, the jury could have reasonably found that appellant did not act in self-defense when he stabbed the victims. By his own admission, appellant was drunk on the night of the fight. And Sosa's testimony, if believed, would establish that appellant was the initial aggressor. Appellant had gotten on top of Carlitos and was choking him, which prompted the initial fight. Further, while Sosa did not witness the actual stabbings, he did witness the events leading up to the stabbings. He testified that after the initial fight was over, appellant got a knife and threatened to kill him.

The present case is distinguishable from the cases relied upon by appellant. In those cases, the prosecution failed to rebut a claim of self-defense. Here, by contrast, appellant's own statements—both in his police interview and his Stand Your Ground testimony—often undermined his self-defense claim. Appellant admitted to the detective that he armed himself with a knife after the initial fight was over, and that he was furious at the time of the stabbings. In his Stand Your Ground testimony, appellant claimed that he did not remember stabbing Carlitos, and seemingly admitted that he did not stab Carlitos in self-defense: "I never stated that I stabbed him to defend myself."

The jury could have reasonably found that the threat to appellant was over when he armed himself with the knife, and that appellant's use of deadly force was not "necessary to prevent imminent death or great bodily harm." Sosa's testimony concerning the events leading up to the stabbings, coupled with appellant's own incriminating statements and inconsistent explanations, provided sufficient evidence to create a jury question on the issue of whether appellant stabbed the victims in self-defense. The trial court properly denied the motion for judgment of acquittal.

5

*Admission of Appellant's Testimony at the Stand Your Ground Hearing*

At trial, the defense objected to the state reading to the jury, in its case-in-chief, a redacted transcript of appellant's testimony at the pre-trial Stand Your Ground hearing. The defense argued that appellant's testimony at the immunity hearing, similar to testimony at a motion to suppress hearing, "would not be automatically admissible as evidence against him" at trial. The trial court initially ruled that the testimony from the Stand Your Ground hearing could be admitted only for impeachment purposes, but later decided that a defendant's statements at a Stand Your Ground hearing were admissible as substantive evidence at trial. The court agreed with the state's argument that "no Constitutional right was being asserted" through appellant's testimony at the Stand Your Ground hearing.

Appellant argues that the trial court erred in admitting his testimony from the Stand Your Ground hearing as substantive evidence at trial, contending that the state may not use as substantive evidence a defendant's testimony as to a "constitutional or substantive" right. Appellant maintains that the Stand Your Ground law enforces a constitutional right—namely, the right to bear arms in self-defense. *See* Art. I, § 8(a), Fla. Const. ("The right of the people to keep and bear arms in defense of themselves . . . shall not be infringed"); *Dist. of Columbia v. Heller*, 554 U.S. 570, 628 (2008) ("[T]he inherent right of self-defense has been central to the Second Amendment right."); *Weiand v. State*, 732 So. 2d 1044, 1057 (Fla. 1999) (stating that "[t]he right to fend off an unprovoked and deadly attack is nothing less than the right to life itself, which [article I, section 2] of our Constitution declares to be a basic right") (citation and internal quotation marks omitted); *see also* Ch. 2005-27, Laws of Fla. (stating in preamble to the Stand Your Ground legislation: "WHEREAS, Section 8 of Article I of the State Constitution guarantees the right of the people to bear arms in defense of themselves").

"A trial court's decision to admit evidence is reviewed using the abuse of discretion standard of review, as limited by the rules of evidence." *Lopez v. State*, 97 So. 3d 301, 304 (Fla. 4th DCA 2012). But where, as here, an evidentiary issue presents a pure question of law, the standard of review is *de novo*. *See Linn v. Fossum*, 946 So. 2d 1032, 1036 (Fla. 2006).

The United States Supreme Court has held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection."

*Simmons v. United States*, 390 U.S. 377, 394 (1968). The Court reasoned that a defendant should not be forced to choose between asserting a Fourth Amendment claim and waiving the Fifth Amendment privilege against self-incrimination: "In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another." *Id.*

The rule of *Simmons* has been applied in other contexts where the defendant gave testimony in the exercise of a constitutional right. *See Johnson v. State*, 537 So. 2d 1116, 1117-18 (Fla. 4th DCA 1989) (applying *Simmons* and holding that a defendant's pre-trial testimony could not be used as substantive evidence against him at trial where the testimony was given in support of a motion to dismiss charges based on an alleged *Brady* violation); *United States v. Garcia*, 721 F.2d 721, 723 (11th Cir. 1983) (applying *Simmons* to a pre-trial double jeopardy hearing); *see also Pedrero v. Wainwright*, 590 F.2d 1383, 1388 n.3 (5th Cir. 1979) (in dicta, citing *Simmons* for the proposition that "[h]ad Pedrero testified at the arraignment in support of his insanity defense or his incompetency claim, that testimony could not have been admitted at trial over his objection").

*Simmons* does not, however, require exclusion of a defendant's pre-trial admissions where the defendant was not forced to surrender one constitutional right in order to assert another. *See State v. Palmore*, 510 So. 2d 1152, 1153 (Fla. 3d DCA 1987). In *Palmore*, the Third District held that a defendant's statements in a sworn motion to dismiss were admissible against the defendant at trial in the state's case-in-chief. *Id.* The court reasoned that because there is no constitutionally protected right to file a motion for dismissal, a defendant making admissions in a motion to dismiss is not forced to choose between two constitutional rights. *Id.* at 1154. The court found that *Simmons* was not applicable, explaining that *Simmons* was expressly limited to cases in which the exercise of a constitutional right conflicts with exercise of another constitutional right. *Id.*

Similarly, as a general rule, a defendant's testimony at a former trial is admissible against the defendant at retrial, even if the defendant declines to testify at the retrial.[3] *State v. Billie*, 881 So. 2d 637, 639 (Fla. 3d DCA

---

[3] There is a limited exception to this rule. A defendant's trial testimony may not be used against him in his retrial where the government introduced illegally obtained confessions at the defendant's first trial, and the defendant took the stand at the first trial solely to rebut the illegally obtained confessions. *See Harrison v. United States*, 392 U.S. 219 (1968).

2004).  And, in *Tarver v. State*, 571 So. 2d 98 (Fla. 3d DCA 1990), a defendant's prior statements at an *Arthur*[4] hearing were held to be admissible both in the state's case-in-chief and for impeachment of the defendant, though the *Tarver* court did not discuss *Simmons*.

Here, because appellant was not forced to make a choice between two constitutional rights, his testimony at the pre-trial Stand Your Ground immunity hearing was admissible against him at trial.  *Cf. Palmore*, 510 So. 2d at 1153-54.  Appellant was not required to surrender any constitutional right by voluntarily testifying in the pre-trial Stand Your Ground immunity hearing.

To be sure, "section 776.032 grants defendants a substantive right to assert immunity from prosecution and to avoid being subjected to a trial." *Dennis v. State*, 51 So. 3d 456, 462 (Fla. 2010).  But this is not a constitutional right.  Stand Your Ground immunity from prosecution is entirely a creature of statute.  Because *Simmons* is limited to situations where the exercise of one constitutional right conflicts with the exercise of another constitutional right, the reasoning of *Simmons* should not be extended to any substantive right that may be created by statute or by rule.

In any event, appellant was not forced to choose between exercising his right to bear arms in self-defense and his Fifth Amendment privilege against self-incrimination.  Appellant obviously had the right of self-defense.  The only dispute was whether appellant was, in fact, exercising that right when he stabbed the two victims.

This case does not present a reason to deviate from the general rule that a defendant's testimony is admissible against him in later proceedings.  Any time a defendant exercises the right to testify at a criminal trial, he risks that his testimony could be used against him at any subsequent retrial.  This case is far more analogous to *Billie* than it is to *Simmons*.  Because a dismissal under the Stand Your Ground law is not a constitutional right, appellant was not forced to make a choice between two constitutional rights when he decided to testify at the pre-trial immunity hearing.  His testimony was therefore admissible in subsequent proceedings.

---

[4] *State v. Arthur*, 390 So. 2d 717, 720 (Fla. 1980) ("[B]efore release on bail pending trial can ever be denied, the state must come forward with a showing that the proof of guilt is evident or the presumption is great.").

*Jury Instructions on the Justifiable Use of Deadly Force*

The trial court gave the standard jury instructions on the justifiable use of deadly force as to both counts. For example, as to the manslaughter count, the relevant portions of the instruction on the justifiable use of deadly force are as follows:

> An issue in this case is whether the defendant acted in self-defense. It is a defense to the offense with which **Anthony Cruz** is charged if the death of Carlos Gonzalez resulted from the justifiable use of deadly force.
>
> "Deadly Force" means force likely to cause death or great bodily harm.
>
> The use of deadly force is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself or another while resisting any attempt to commit Aggravated Battery upon him[.]
>
> However, the use of deadly force is not justifiable if you find:
>
> **Anthony Cruz** *initially provoked the use of force against himself*, unless:
>
> (a) The force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm *and had exhausted every reasonable means to escape the danger*, other than using deadly force on Carlos Gonzalez. [Or][5]
>
> (b) In good faith, the defendant withdrew from physical contact with Carlos Gonzalez and indicated clearly to Carlos Gonzalez that he wanted to withdraw and stop the use of deadly force, but Carlos Gonzalez continued or resumed the use of force.
>
> In deciding whether defendant was justified in the use of

[5] The written instructions did not include an "or," but the court did say "or" while giving the oral instructions.

9

deadly force you must judge him by the circumstances by which he was surrounded at the time the force was used. . . .

If the defendant was not engaged in any unlawful activity and was attacked in any place where he had a right to be, he *had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force*, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or another, or to prevent the commission of a forcible felony.

(emphasis added).

On appeal, appellant argues that under *Floyd v. State*, 151 So. 3d 452 (Fla. 1st DCA 2014), *rev. granted* 2014 WL 7251662 (Fla. Dec. 16, 2014), the jury instruction on the justifiable use of deadly force is fundamental error because it provides conflicting instructions on the duty to retreat.

Because this issue was unpreserved by an objection below, it "can be raised on appeal only if fundamental error occurred." *State v. Delva*, 575 So. 2d 643, 644 (Fla. 1991). Fundamental error exists where the defendant's sole defense at trial was that he acted in self-defense, and incorrect jury instructions on the duty to retreat effectively negate that defense. *Dorsey v. State*, 149 So. 3d 144, 147 (Fla. 4th DCA 2014); *Richards v. State*, 39 So. 3d 431, 434 (Fla. 2d DCA 2010).

In *Floyd*, a case where the defendant's sole defense at trial was that his use of deadly force was justified, the First District held that the standard instruction on the justifiable use of deadly force constituted fundamental error because it provided conflicting instructions on the duty to retreat and negated the defendant's only defense. 151 So. 3d at 453-54. The court found that the instruction was conflicting because the Stand Your Ground portion of the instruction stated that the defendant had no duty to retreat if he was not engaged in any unlawful activity, but the provocation portion of the instruction stated that a defendant who initially provoked the use of force may use deadly force "only if the defendant has first exhausted every means of escape." *Id.* at 454 (emphasis removed). The court stated: "In effect, the jury instruction here provided that Floyd did not have to retreat . . . *and* did have a duty to try to retreat before using deadly force if in fear of death or great bodily harm." *Id.* The court thus found fundamental error, reasoning that "[t]he conflicting jury instructions negated each other in their effect, and therefore negated their possible application to Floyd's only defense." *Id.*

Although not stated in the *Floyd* opinion, the First District issued an order certifying the following question to the Florida Supreme Court as one of great public importance: "DOES FLORIDA STANDARD JURY INSTRUCTION (CRIMINAL) 3.6(F) PROVIDE CONFLICTING INSTRUCTIONS AS TO THE DUTY TO RETREAT?" The Florida Supreme Court has granted review. *See State v. Floyd*, 2014 WL 7251662 (Fla. Dec. 16, 2014).

In the meantime, the First District continues to adhere to *Floyd*. *See Furr v. State*, 157 So. 3d 541 (Fla. 1st DCA 2015); *Ross v. State*, 157 So. 3d 406(Fla. 1st DCA Feb. 3, 2015). By contrast, in *McClain v. State*, 2015 WL 1256439 (Fla. 5th DCA Mar. 20, 2015), the Fifth District declined to take a position on whether *Floyd* was correctly decided, explaining: "We . . . conclude that McClain could not establish fundamental error in this case even if we were to follow *Floyd*, because McClain did not advance a self-defense theory at trial."

We note that courts have declined to find fundamental error under *Floyd* where there was a factual dispute as to who was the initial aggressor. *See Woodsmall v. State*, 40 Fla. L. Weekly D864 (Fla. 5th DCA Apr. 10, 2015); *Sims v. State*, 140 So. 3d 1000, 1003 n.3 (Fla. 1st DCA 2014).

The instructions in this case are virtually identical to the ones given in *Floyd*. And even though there was a factual dispute in this case as to who was the initial aggressor, our determination that the trial court did not err in giving the standard instructions is not based on *Floyd*; we conclude that *Floyd* was incorrectly decided.

The standard instruction on the justifiable use of deadly force, given both in *Floyd* and in this case, is not internally inconsistent. The Stand Your Ground portion of the instruction stands for the general proposition that a defendant who is not engaged in any unlawful activity and is attacked in a place where he has the right to be has no duty to retreat, while the "aggressor" part of the instruction provides an exception to this general proposition for a defendant who provokes the use of force against himself (without withdrawing from physical contact in good faith). Both parts of the instruction are a correct statement of the law. Indeed, the relevant language of the instruction comes directly from the applicable provisions of Chapter 776. *See* § 776.013(3), Fla. Stat. (2008) (stating that "[a] person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force . . . ."); § 776.041(2), Fla. Stat. (2008) ("The justification described in the preceding sections of this chapter is not

11

available to a person who: . . . (2) Initially provokes the use of force against himself or herself, . . . .").

Because the standard instruction on the justifiable use of deadly force is a correct statement of the law, appellant has not shown error in the jury instructions, let alone fundamental error. We affirm on this issue and certify conflict with *Floyd*.

*Habitual Offender Sentence*

Finally, appellant argues that it was unconstitutional to impose habitual offender sentences on him based on findings of fact regarding the defendant's prior criminal record that were not made by the jury.

"The standard of review for the legality of a criminal sentence is de novo." *State v. Valera,* 75 So. 3d 330, 332 (Fla. 4th DCA 2011).

In *Alleyne v. United States,* 133 S.Ct. 2151, 2155 (2013), the United States Supreme Court ruled, consistent with its earlier decision in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." The *Alleyne* Court explicitly stated, however, that it was not revisiting *Almendarez–Torres v. United States,* 523 U.S. 224 (1998), in which it had previously "recognized a narrow exception to this general rule for the fact of a prior conviction." *Alleyene,* 133 S.Ct. at 2160 n.1.

Our court has previously held that habitual offender sentences do not violate *Apprendi. See, e.g., St. Louis v. State,* 985 So. 2d 16, 18 (Fla. 4th DCA 2008).

Appellant acknowledges our court's precedent, but argues that this line of cases "must be revisited in light of *Alleyne*" and that the "logic of *Alleyne* dictates that *Almendarez*-Torres be overruled." The problem with this argument, however, is that we do not have the authority to overrule *Almendarez-Torres.* Because the United States Supreme Court has yet to overrule the "prior conviction" exception, *Almendarez-Torres* is still binding precedent. *See United States v. Rivas,* 555 Fed.Appx. 895, 897 (11th Cir. 2014) ("*Alleyne* expressly left *Almendarez–Torres* undisturbed, and we are bound to follow *Almendarez–Torres* as binding precedent.").

Likewise, the cases rejecting *Apprendi/Alleyene* challenges to recidivism statutes remain good law. *See St. Louis,* 985 So. 2d at 18; *Culp v. State,* 141 So. 3d 1279 (Fla. 1st DCA 2014); *Williams v. State,* 143 So.

3d 423 (Fla. 1st DCA 2014); *Lopez v. State,* 135 So. 3d 539 (Fla. 2d DCA 2014).

Appellant's habitual offender sentence did not violate *Apprendi* or *Alleyene.* Under current precedent, the existence of appellant's prior convictions is not a fact that must be submitted to a jury. We affirm as to this issue.

*Conclusion*

For the foregoing reasons, we affirm appellant's convictions and sentences.

*Affirmed; conflict certified.*

STEVENSON and CIKLIN, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***