DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**RAUL EDUARDO BANEGAS-MEMBRAN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D14-2681

[January 6, 2016]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Robert E. Belanger, Judge; L.T. Case No. 562012CF003253A.

Michael R. Ohle of Ohle & Ohle, Stuart, for appellant.

Pamela Jo Bondi, Attorney General, and Catherine Linton, Assistant Attorney General, West Palm Beach, for appellee.

FORST, J.

Appellant Raul Banegas-Membran was found guilty of tampering with a witness under section 914.22(1), Florida Statutes (2013). Because of the nature of the underlying crime for which he initially had been tried, he was sentenced to life in prison. Appellant raises three issues on appeal: (1) the trial court erred by not allowing him to introduce evidence of the not-guilty verdicts obtained in the trial for his underlying crimes in order to impeach the credibility of the State's primary witness against him; (2) the State's characterization of the intimidation element of the witness tampering statute was incorrect and improperly lowered the State's burden of proof; and (3) the trial court erred in denying his Motion for Judgment of Acquittal. We agree with all three of Appellant's challenges. We therefore reverse and remand this case and direct that the trial court grant Appellant's Motion for Judgment of Acquittal.

**Background**

Appellant was charged with four counts of sexual crimes with a minor. While in jail awaiting trial, he sent a letter to his former girlfriend, the

mother of the alleged victim. The letter ends with Appellant begging the mother to "stop, don't do nothing else, just don (sic) talk to anybody . . . . [Y]our silence is all I ask you." He also states that if his case goes to trial, "[e]verybody will find out all this mess . . . [and the mother's children's] grandma and father and [the mother] will be in the eye of a hurricane fighting for [the mother's] kids' custody." He opines that such a fight would "break my heart because [the kids] belong to go with you."

The mother did not do what the letter requested. Instead, she turned the letter over to the state attorney who added witness tampering to Appellant's charges. Appellant was eventually found not guilty on the two sex offenses that went to trial despite the mother testifying against him.

Appellant then went to trial on the mother tampering charge. Knowing that the State would call the mother, Appellant sought to introduce the evidence of his not-guilty verdicts in order to impeach the mother's credibility and demonstrate that the mother was biased against Appellant and was using the tampering charge as a second opportunity to send Appellant to prison. The court, however, granted the State's motion preventing Appellant from introducing his prior verdicts.

At trial, the State primarily relied upon the testimony of the mother. She described the contents of the letter and explained how it was sent four days before she and her daughter were scheduled for depositions. She also testified that the letter made her afraid.

At the close of the State's case, Appellant moved for a judgment of acquittal, which the court denied.

During closing arguments, the State told the jury that it could use its common sense to define "intimidation" under the witness tampering statute. The State further informed the jury that "manipulation" was one form of "intimidation." Appellant objected to this characterization of the statute, but the court overruled the objection.

The jury found Appellant guilty and the court sentenced him to life in prison.

## Analysis

### I. Excluded Testimony

We review a trial court's decision regarding the admission of evidence for abuse of discretion, with the trial court's discretion limited by the rules

2

of evidence. *Lopez v. State*, 97 So. 3d 301, 304 (Fla. 4th DCA 2012).

"Section 90.608(2), Florida Statutes, permits cross-examination to 'attack the credibility of a witness by . . . [s]howing that the witness is biased.'" *Martino v. State*, 964 So. 2d 906, 908 (Fla. 4th DCA 2007) (alterations in original). Examination of this sort serves to fulfill the Sixth Amendment's right to confrontation. *Id.*; *see also Henry v. State*, 123 So. 3d 1167, 1169-70 (Fla. 4th DCA 2013). "This right 'is especially necessary when the witness being cross-examined is the key witness on whose credibility the State's case relies.'" *Martino*, 964 So. 2d at 908 (quoting *Docekal v. State*, 929 So. 2d 1139, 1142 (Fla. 5th DCA 2006)). "[A] trial court may not prohibit cross-examination 'when the facts sought to be elicited are germane to that witness'[s] testimony and plausibly relevant to the theory of defense." *Id.* (quoting *Bertram v. State*, 637 So. 2d 258, 260 (Fla. 2d DCA 1994)).

Here, Appellant sought to elicit testimony about his previous not-guilty verdicts to show that the mother had an interest in seeing him convicted. Because the theory of defense was that the mother was lying, evidence of a reason for bias was certainly "plausibly relevant" to that theory and "germane to that witness' testimony." *Martino*, 964 So. 2d at 908. To the extent there was any risk of confusing the jury on the issues, that risk was not sufficient to exclude the evidence of bias. *See Love v. State*, 971 So. 2d 280, 286 (Fla. 4th DCA 2008) ("[T]he Sixth Amendment narrows a trial court's discretion to exclude evidence of a witness'[s] bias under section 90.403.").

The alternative avenues of impeachment that the State argues Appellant could have taken would not have been proper substitutes for the method of impeachment sought. Simply asking someone if they are biased, without the ability to present extrinsic evidence of a bias if they say no, is an illusory way of guaranteeing the Sixth Amendment right to confrontation. Additionally, introducing evidence of the previous charges without evidence of the verdicts may have led to the jury speculating on what happened in the previous trial, perhaps tainting their opinion of Appellant under the false impression that he had been convicted.

"All relevant evidence is admissible, except as provided by law." § 90.402, Fla. Stat. (2014). "Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403, Fla. Stat. (2014). As discussed above, testimony regarding the jury's verdict in the underlying case was relevant. Any fear that the jury in the tampering case would be

3

confused did not substantially outweigh this relevance. Appellant had a constitutional right to be able to confront his accuser. By the exclusion of the evidence he sought, he was denied the meaningful exercise of that right. The trial court therefore erred by granting the State's motion to suppress the evidence of the not-guilty verdicts.

## II. Attempted Manipulation of a Witness is not a form of Attempted Intimidation of a Witness

The second question on appeal is whether the trial court erred in overruling Appellant's objections to the State's closing argument statements which intimated that manipulation is a form of intimidation under section 914.22(1), Florida Statutes (2014). We review the interpretation of statutes de novo. *D.A. v. State*, 11 So. 3d 423, 423 (Fla. 4th DCA 2009). In relevant part, section 914.22(1) criminalizes the actions of:

> A person who knowingly uses intimidation or physical force, or threatens another person, or attempts to do so, or engages in misleading conduct toward another person, or offers pecuniary benefit or gain to another person, with intent to cause or induce any person to [withhold testimony or otherwise not provide truthful evidence] . . . .

Whether "manipulation" may constitute "intimidation" as set forth in the statute appears to be a question of first impression in this state.

"It is a fundamental principle of statutory interpretation that legislative intent is the 'polestar' that guides this Court's interpretation." *Borden v. E.-European Ins. Co.*, 921 So. 2d 587, 595 (Fla. 2006). "In attempting to discern legislative intent, we first look to the actual language used in the statute. When the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." *Daniels v. Fla. Dep't of Health*, 898 So. 2d 61, 64 (Fla. 2005) (internal citations omitted).

"Tugging at the heartstrings," as the State characterized the manipulation here, is not subsumed within the plain meaning of the word "intimidation." Intimidation necessarily includes an element of fear. If one is not afraid, one is not intimidated; and if one does not intend to cause fear, one does not intend to intimidate. Nothing about "tugging at the heartstrings" indicates an attempt to instill fear — in fact, fear would be counterproductive in this endeavor. Although intimidation is one possible form of manipulation, because an act of intimidation is an attempt to affect

4

the intended recipient's future actions, the reverse does not necessarily follow.

Florida's section 914.22 is based on a federal statute, 18 U.S.C. § 1512. *State v. Cohen,* 545 So. 2d 894, 894 (Fla. 4th DCA 1989). However, there is at least one important difference between the two statutes that is relevant here: the federal statute criminalizes "knowingly . . . corruptly persuad[ing]" another person in addition to "knowingly us[ing] intimidation . . . ." 18 U.S.C. § 1512(b) (2014). The Florida statute does not contain any similar language.

In the federal system, the corrupt persuasion language has formed the basis for convictions based on manipulation. *See, e.g., United States v. Eads*, 729 F.3d 769, 779-80 (7th Cir. 2013) (holding that the defendant's "clear effort at manipulation" was sufficient to preface a conviction under the corrupt persuasion clause of 18 U.S.C. § 1512(b)). However, as discussed above, the Florida statute does not have similar "corrupt persua[sion]" language, thus bolstering our conclusion that the Florida statute, without this language, does not criminalize non-intimidating efforts to manipulate.

We therefore hold, both based on the plain meaning of the word "intimidate" and on the federal courts' reliance on a clause not found within the Florida law, that manipulation is not a form of intimidation under section 914.22, Florida Statutes. The State's conflation of these terms in its closing arguments certainly could have contributed to the jury's verdict. *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986) (setting forth the harmless error standard). We therefore reverse and would remand for a new trial, but for our final holding.

### III.   Motion for Judgment of Acquittal

We review motions for judgment of acquittal de novo. *Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002). "If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." *Id.* This is deemed the "sufficiency of the evidence standard." *Velloso v. State*, 117 So. 3d 903, 905 (Fla. 4th DCA 2013). "When considering a motion for judgment of acquittal under rule 3.380, a trial court must determine as a matter of law whether the evidence presented was adequate to support a conviction." *Ferebee v. State*, 967 So. 2d 1071, 1072-73 (Fla. 2d DCA 2007).

The element at issue is the "knowingly uses intimidation" provision of

section 914.22, Florida Statutes. The State's evidence supporting a finding of knowing intimidation was the letter itself and the mother's testimony regarding her reaction to the letter. The mother testified that she believed the letter indicated that Appellant would take some sort of action against her or her children. The mother specifically referred to the part of the letter warning of a possible custody battle if she should testify.

We start by acknowledging, as the State encourages us to, that the mother's reactions to the letter are irrelevant to the crime of witness tampering. The statute's clear focus is on a defendant's "knowing" *use of* intimidation, not on the defendant successfully intimidating his or her victim. Understanding the statute in this manner compels us to hold that the evidence admitted was insufficient to support a conviction of the crime charged.

In the State's closing, the prosecutor characterized the letter at issue as "tugging at the heartstrings." The prosecutor added that "[Appellant's] just saying he loves her, it's a love letter," and then commented that most of the letter "are just, you know, memories that they have together, things that have happened and it's not really till the last page or so, maybe the last two paragraphs that it starts turning into what the State submits to you is—is the tampering portion of that."

In the final two paragraphs of the letter, Appellant wrote:

> Do you hate me that much and if you dont, I'm here beging you in the name of god your family kids, sisters, mother, in laws, stop don't do nothing else just don talk to anybody "absolutely anybody" nobody" your silence is all I ask you no matter who send you apointments just don go so in the name of the love you said you had for me, in my side I can tell you I will never forget you, you will always be in my heart nothing its gonna change my love for you, my love its gonna be with me for ever I love you with heart, body, and soul this life now and the eternity.

> Just stop. Don't create a chain reactión that at the end its going to afect everybody, if I go to trial I have to look at people like witneses and obiosly they will be neighbors friends, you family everybody will find out all this mess and then what their grandma and father and you will be in the eye of a hurricane fighting for your kids custody? thats gonna break my heart because they belong to go with you dont allow this situation get biger, just stop. I don't hate you [Witness], I love

6

you.  I know we [illegible] going to get back together but you will always be in my heart take care of you of the kids of the family Love you[.][1]

The only evidence introduced by the State in this case was the letter, the date of mailing, and the mother's subjective reactions to it.  At no point did the State establish a pattern of activity that would suggest this letter would lead to more correspondence or contacts.  Because the statute requires us to ignore the mother's reactions and focus only on the mens rea of the writer (Appellant) when the letter was sent, we are unable to say that a reasonable trier of fact could have found, beyond a reasonable doubt and based on the text of the letter and the date of mailing alone, that Appellant used intimidation or threats.

The text of the letter does not read to a reasonable person as a use of intimidation.  Nor do the lines referring to a custody battle mean what the mother seems to have taken them to mean.  Appellant was warning the mother about a custody battle initiated by *other people* and expressed his desire that the children actually stay with the mother.  Although the mother and the State argued that this constituted a "threat," a reasonable person could not come to that conclusion, and the State failed to present evidence that Appellant had the means or the desire to initiate or encourage a custody battle.

As described above, the letter sent by Appellant is essentially a plea for mercy, a "tugging at the heartstrings."  He begs the mother to stop her efforts in the case and repeatedly proclaims his love for her.  Intentional or not, the letter is clearly an attempt to manipulate the mother, but not through intimidation or fear.  Appellant doesn't warn of negative repercussions attributable to him that will befall the mother if she testifies against him.  Instead, his letter asks the mother to pity him and to show mercy.  Based purely on the contents of this letter and the fact that it was mailed shortly before a scheduled deposition, no rational factfinder could find that Appellant "knowingly used intimidation" with the intent to prevent the mother from testifying.  Whether the mother was in fact intimidated is irrelevant to this analysis.

---

[1] Appellant's letter contained numerous spelling and punctuation errors.  We have attempted to preserve these as much as possible in the above quotation.  Adding to our difficulty is the fact that the left portion of the letter was not properly scanned into the record. Where the omitted or truncated words are clear from context, they have been added.  The exact wording of the letter, however, is not essential to our holding.

We therefore reverse the trial court's denial of Appellant's Motion for Judgment of Acquittal.

## Conclusion

We hold that this case presents three independently sufficient reasons to reverse. Appellant was denied his Sixth Amendment right to confront the mother when the trial court impermissibly limited evidence that may have impeached her credibility. The State mischaracterized the elements of the crime by suggesting that manipulation is a subcategory of intimidation when in fact the opposite is closer to the truth. And finally, based on the evidence introduced, had the jury been properly instructed, it could not have reasonably reached the conclusion that the element of intimidation was proven beyond a reasonable doubt. For all of these independently sufficient reasons, we reverse.

Our reversal of the first two issues — the limitation of evidence and the State's comments — normally would lead to a new trial. However, because we also direct that Appellant's Motion for Judgment of Acquittal be granted, a new trial is both unnecessary and improper.

We remand with instructions for the trial court to grant Appellant's Motion for Judgment of Acquittal.

*Reversed.*

WARNER and STEVENSON, JJ., concur.

\*       \*       \*

***Not final until disposition of timely filed motion for rehearing.***

8