HAWKES, C.J.
 

 The defendant in this direct criminal appeal challenges his conviction for aggravated battery on a law enforcement officer. Specifically, the defendant argues the trial court committed fundamental error by instructing the jury on an uncharged alternative theory of aggravated battery. We disagree. We affirm the defendant’s conviction holding section 784.045, Florida Statutes (2008), creates two, not four, distinct aggravated battery crimes and that the trial court properly instructed the jury under the first of the two distinct crimes.
 

 Defendant’s Argument
 

 The defendant raises a detailed argument that reversal is warranted because he
 
 may
 
 have been convicted of a crime he was not charged with committing. His argument is: (1) Section 784.045 creates four separate crimes of aggravated battery; (2) The information charged the defendant with committing “great bodily harm aggravated battery,” one of the four
 
 *893
 
 separate crimes, not “permanent disability aggravated battery,” another of the crimes; (3) At trial, the State introduced unobjected-to evidence that was probative of this “permanent disability aggravated battery”; (4) At the close of trial, the trial judge read, without objection, the standard jury instruction for aggravated battery. Contained within the standard instruction was the uncharged crime of “permanent disability aggravated battery”; (5) Because the jury may have convicted the defendant for committing this “permanent disability aggravated battery” rather than the charged “great bodily harm aggravated battery,” the instruction was erroneous; and (6) Such an error is per se reversible. We disagree. There are at least five flaws in the defendant’s logic which we have set out below. In the first section, we explain that the statute creates two, not four aggravated battery offenses. In the last four sections, we explain why we would affirm the defendant’s conviction even if he were correct in arguing the statute created four aggravated battery offenses.
 

 First, section 784.045 creates only two aggravated battery crimes, not four. Both the structure of the statute and the case law interpreting the statute support this premise.
 

 Second, the information sufficiently placed the defendant on notice as to what conduct he was being prosecuted for, rendering any error harmless.
 

 Third, the evidence presented supports a finding of great bodily injury, the crime charged. The fact that the evidence could also support another uncharged crime is inconsequential.
 

 Fourth, the standard jury instruction did not result in fundamental error, under these facts.
 

 Fifth, existing case law prohibits reversal. On two separate occasions, the defendant acquiesced and agreed to the use of the allegedly erroneous jury instruction. Accordingly, the error was invited and cannot result in reversal.
 

 We discuss each of these five points in turn.
 

 The Statute Consists of Two Subsections and Creates Only Two Offenses of Aggravated Battery
 

 Section 784.045 sets forth only two crimes of aggravated battery. Evidence that the statute creates two crimes can be found in the simple fact that the statute contains two subsections. The first subsection, 784.045(l)(a)l, sets forth a crime that focuses on the harm suffered by the victim. Included in this crime are acts resulting in what the statute describes as great bodily harm, permanent disability, or permanent disfigurement. The second subsection, 784.045(l)(a)2, sets forth a crime that focuses on the weapon the defendant used to commit the battery. Only the first subsection is relevant to the instant case.
 

 Not only does the structure of section 784.045 logically suggest two crimes, but the Florida Supreme Court has interpreted the statute as creating only two crimes.
 
 See State v. Warren,
 
 796 So.2d 489 (Fla.2001). In
 
 Warren,
 
 the Court held “[t]he term aggravated battery refers to the touching or striking (battery) of another which causes
 
 great bodily injury
 
 [the first crime — subsection 1] or where
 
 a deadly weapon is used
 
 [the second crime — subsection 2].”
 
 Id.
 
 at 490-91. (emphasis added). The phrase “great bodily injury” is not a phrase found in the statute; it is the phrase the Supreme Court used when interpreting the statute. Consistent with the language and structure the Legislature used in drafting section 784.045(l)(a)l, the Supreme Court condensed the terms great bodily harm, permanent disfigurement and permanent disability into the single, logical
 
 *894
 
 phrase “great bodily injury” to describe the first crime.
 

 Here, the State based its charge, as set forth in the information, on the “great bodily injury” the defendant caused the victim, Deputy Page. The evidence showed Deputy Page was driven to the ground by the defendant, his elbow was ripped open to the bone, his wound required internal and external stitches and he still suffers numbness as a result of the injury. Deputy Page’s doctors told him that the injury was so severe (or great) he would suffer its consequences for the rest of his life. It is obvious Deputy Page suffered “great bodily injury” as discussed by the Supreme Court in
 
 Warren.
 
 That is the offense that was charged and that is the offense that was proven. There was no error in the evidence or in the instructions.
 

 The Information Sufficiently Placed the Defendant on Notice of the Criminal Conduct He was Charged with Committing
 

 Even if we accepted the defendant’s argument that the statute created four separate aggravated battery crimes, the conviction would still be affirmed. The information placed the defendant on sufficient notice of the conduct for which he was being prosecuted. Florida courts have consistently held that when an information cites a specific statute, the defendant is put on notice that he is charged with each of the elements of the offense contained in that statute.
 
 See DuBoise v. State,
 
 520 So.2d 260, 265 (Fla.1988);
 
 see also Jacques v. State,
 
 1 So.3d 1112 (Fla. 4th DCA 2009) (holding an information that references a specific section of the criminal code is sufficient to charge the defendant with committing the crime contained in that section);
 
 and see State v. Covington,
 
 392 So.2d 1321 (Fla.1981) (holding an information citing a specific statute will be invalid only where it is “so imprecise as to leave the defendant entirely unable to reasonably discern what conduct the prosecution relies upon”).
 

 Any concern, that the information did not put the defendant on notice that he might be convicted of “permanent disability aggravated battery,” is completely unsupported. The information specifically charged the defendant with violating section 748.045 — the aggravated battery statute. Therefore, the defendant had sufficient notice that he could be convicted of any of the crimes listed in that specific section of the criminal code. The case law has mandated that a criminal defendant must establish an information was so imprecise that it left him entirely unable to discern the actions he is being prosecuted for. Here, there is no dispute that the information placed the defendant on notice that he could be convicted based on the permanent (or great) harm he did to Deputy Page’s elbow.
 
 [1]
 
 Thus, because the defendant was charged with violating the aggravated battery statute, there can be no error in reading the standard jury instruction for that statute.
 

 The State’s Evidence Was Probative of the Charged Offense
 

 Assuming arguendo that sub-section 784.045(l)(a)l should be interpreted as containing three separate crimes of aggravated battery, the defendant unpersuasively argues the State sought to convict him for the uncharged crime of, “permanent disability aggravated battery.” The fact that some of the State’s evidence could have proven “permanent disability aggravated battery” (if there were such a crime), does not preclude this evidence
 
 *895
 
 from being offered to prove Deputy Page suffered great bodily harm.
 

 Relevant and material evidence is always admissible. This is true even if it would also support some uncharged crime.
 
 See McLean v. State,
 
 934 So.2d 1248 (Fla.2006) (holding “relevant evidence will not be excluded merely because it relates to similar facts which point to the commission of a separate crime; the test of admissibility of collateral crime evidence is relevancy, and the test of inadmissibility is a lack of relevancy”).
 

 Under any theory, the State had the burden of proving the victim suffered great bodily harm. To do so, the State presented evidence regarding the extent of Deputy Page’s injuries. Evidence of the extent of the injuries is always critical for the jury to determine if they resulted in great bodily harm.
 

 Obviously, if the victim suffers only minor injury, a charge of “great bodily harm aggravated battery” could not be proven. A determination that the injury was only “minor” would include consideration of such factors as how long the injury took to heal and how long the injury impacted the victim’s quality of life. Using the same criteria, a victim that took a long time to heal and suffered adverse impacts for a long period of time could reasonably be found to have suffered “great bodily harm.” However, if the defendant’s logic is correct, once the injury becomes permanent it can no longer be found to be “great.” This means that if a victim suffered the loss of a leg, for instance, the State could not convict the defendant of inflicting great bodily harm because the injury would be permanent. Clearly, that cannot be the rule.
 

 Put simply, the fact that Deputy Page’s injuries were so severe that they resulted in his permanent disability is relevant evidence of great bodily harm. Thus, because the State’s evidence was relevant, probative and material to the charged offense, there was no error.
 

 The Unobjected-To Jury Instruction Does Not Result in Fundamental Error
 

 The defendant did not object to the alleged error in the jury instruction. Because unobjected-to, the error was unpre-served. Because unpreserved, the error is of no consequence here unless it is found to be fundamental. Fundamental error results only when an unobjected-to error “reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.”
 
 Cardenas v. State,
 
 867 So.2d 384, 390 (Fla.2004);
 
 see also State v. Weaver,
 
 957 So.2d 586, 588 (Fla.2007). Obviously, the only way to determine if error is fundamental is to engage in a weighing process. The defendant would have us circumvent this process and find his proposed error in the jury instructions to be fundamental per se.
 

 The Florida Supreme Court has never ruled that all jury instruction errors constitute fundamental error.
 
 See Martinez v. State,
 
 981 So.2d 449 (Fla.2008). Even in cases concerning an uncharged offense— the defendant’s argument here—the Supreme Court has refused to adopt a per se reversal rule.
 
 See Weaver,
 
 957 So.2d at 586.
 
 Weaver
 
 does not stand as a narrow exception to a well-established rule. Instead,
 
 Weaver
 
 stands for the proposition that in determining if a jury instruction error is fundamental, appellate courts will evaluate the impact an erroneous instruction had on the trial.
 

 Under
 
 Weaver,
 
 this evaluation has two prongs. Both of these prongs must be satisfied before a defendant can have a conviction reversed. The first prong requires a showing that the State introduced evidence to prove the uncharged crime. The second prong requires a showing that
 
 *896
 
 the State made arguments based on the uncharged crime. Neither prong is met here.
 

 The defendant argues the first prong was satisfied because some of the State’s evidence could have proven “permanent disability aggravated battery.” As previously discussed, this is incorrect. The evidence was completely admissible to prove Deputy Page suffered great bodily harm. Therefore, definitionally, it was not offered to prove an uncharged offense.
 

 In deciding whether the second prong is met, the Supreme Court examines what issues were contested or disputed at trial.
 
 See Weaver.
 
 In evaluating this record, it is clear the State did not argue that the jury could convict the defendant based solely on Deputy Page’s permanent disability. The record is even clearer that the defense did not “dispute” or “contest” Deputy Page’s injuries. The defense made no challenge to the assertion that the victim suffered great bodily harm. Rather, the defense based its entire trial strategy on the defendant’s lack of the requisite intent to harm Deputy Page. Thus, the defendant’s intent, and not the extent or permanence of the injury, was the sole issue in dispute at trial.
 

 Further record evidence that the State did not argue the uncharged crime can be found by examining the closing argument.
 
 See Weaver.
 
 The closing argument in this case comprises about sixteen pages of transcript. These sixteen pages include the State’s close, the defense’s close and the State’s rebuttal. Neither the State in its close, nor the defense in its close, made any reference to Deputy Page’s injuries. The entire argument is focused on intent and different aspects of the evidence that would support a finding either that the defendant intended his actions or that he did not.
 

 Not until the State’s rebuttal argument is there any reference to the actual injuries Deputy Page suffered. These comments comprise fewer than sixty words, and under any fair analysis, speak only to the issue of great bodily harm, the charged offense. After telling the jury that Deputy Page suffered “serious bodily harm,” the prosecution then just simply lists the injuries to support the allegation. The argument reads:
 

 This is serious bodily harm, I would submit to you. He’s permanently disabled, 2 percent, has lost some feeling in his hand. His ulnar nerve on his elbow after a year is still not where it should be. He had internal stitches and external stitches. Had gravel in the wound. Had several marks and cuts around his elbow.
 

 The State argued that these facts elicited during trial were sufficient to convict the defendant of inflicting “serious bodily harm.” Here, as in
 
 Weaver,
 
 the State did not rely upon an uncharged crime or theory in its prosecution and the allegedly erroneous instruction did not concern a critical or disputed jury issue. Thus, using a proper analysis, it is clear the court’s reading of the standard jury instruction did not “reach down into” the validity of the trial and vitiate the verdict. Therefore there was no fundamental error.
 

 Acceptance of the Defendant’s Argument Would Create a Bizarre Incentive for Defense Counsel to Agree to Incorrect Jury Instructions
 

 The defendant requests we reverse a verdict even though the trial court read a standard jury instruction the defendant expressly agreed to on two separate occasions. The general rule in criminal law is that where a trial court has extended counsel an opportunity to cure an error, and counsel fails to take advantage of such an opportunity, the error is considered acquiesced to and does not warrant reversal.
 
 See Ray v. State
 
 403 So.2d 956, 960 (Fla.
 
 *897
 
 1981). Here, the defendant did not object to the instruction he argues was so faulty that it “reached down into the validity of the trial.” In fact, at both the charge conference and immediately after the instructions were read to the jury, the defendant specifically agreed to the instructions and stated he had no objections to them as proposed and as read.
 

 To reverse under these facts would guarantee a defendant a new trial anytime there was any error in an instruction. The consequence of such a rule would essentially obligate a defense attorney to stand mute and, if necessary, agree to an erroneous instruction where, as here, the allegedly faulty instruction does not involve an issue in dispute. In fact, under such precedent, an attorney who brings a faulty jury instruction to the court’s attention or refuses to agree to an instruction that misstates the law would sacrifice his client’s opportunity for a second trial and would risk being found incompetent as a consequence.
 

 We affirm the trial court’s ruling.
 

 AFFIRMED.
 

 ROBERTS and CLARK, JJ., concur.
 

 [1]
 

 . If the defendant was confused as to what the information charged, he had the option of moving for a statement of particulars.
 
 See
 
 Fla. R.Crim. P. 3.140(n) (2008).