WETHERELL, J.
Appellant raises two issues in this direct appeal of his judgment and sentence for aggravated battery. We affirm the first issue without further comment, and for the reasons that follow, we also affirm Appellant’s claim that the trial court fundamentally erred in giving the standard jury instruction on the affirmative defense of justifiable use of non-deadly force.
The State charged Appellant with aggravated battery for a fight that occurred at William Perkins’ house in April 2012. Although there was conflicting evidence as to how Appellant came to be at Perkins’ house, it was undisputed that Appellant refused to leave even though Perkins repeatedly asked him to do so. Perkins called the Sheriffs Office for assistance, and on the recording of the call presented *1002 at trial, Appellant can be heard accusing Perkins of sleeping with Appellant’s wife and yelling threats and obscenities at Perkins, including “I am going to beat your fucking ass until the cops get here.”[1] The fight started at the end of the call.
Perkins testified that Appellant was the initial aggressor and that Appellant poked him in the eye, hit him in the head with his fist, and kicked him multiple times with steel-toe boots after knocking him to the ground. Perkins testified that he suffered a closed head injury and multiple facial fractures as a result of the fight. Photographs showing Perkins’ injuries were introduced into evidence.
The State also presented the testimony of a neighbor who witnessed part of the fight. The neighbor testified that he saw Appellant and Perkins yelling at each other and that he also saw Appellant strike Perkins in the head, knocking him to the ground at which point Perkins curled up in a defensive position and Appellant began kicking him in the head.
Appellant testified on his own behalf. He claimed that Perkins was the initial aggressor and that he only punched Perkins to defend himself after Perkins punched him in the chin and kept coming at him as he was trying to leave Perkins’ property. Appellant admitted pushing Perkins down, but he categorically denied kicking Perkins while he was on the ground. Appellant admitted that he did not have any injuries as a result of the fight.
Appellant’s primary theory of defense was that he acted in self-defense when he punched Perkins.[2] Appellant requested an instruction on the issue of justifiable use of non-deadly force and, without objection, the trial judge gave the standard jury instruction on the issue. See Fla. Std. Jury. Instr. (Crim.) 3.6(g). In pertinent part, the jury was instructed:
Now an issue in this case is whether [Appellant] acted in self-defense. It is a defense to the offense with which [Appellant] is charged if the injury to [Perkins] resulted from the justifiable use of non-deadly force.
Non-deadly force means force not likely to cause death or great bodily harm. [Appellant] would be justified in using non-deadly force against [Perkins] if the following two facts are proved:
*1003 First. [Appellant] must have reasonably believed that such conduct was necessary to defend himself against [Perkins’] imminent use of unlawful force against [Appellant].
Second. The use of unlawful force by [Perkins] must have appeared to [Appellant] to be ready to take place.

Now, if [Appellant] was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or to prevent the commission of a forcible felony.

As used with regards to self-defense, a person does not have a duty to retreat if the person is in a place where he has a right to be.
* * * [3]
Now in considering the issue of self-defense, you may take into account the relative physical abilities and capacities of [Appellant] and [Perkins].
If in your consideration of the issue of self-defense you have a reasonable doubt on the question of whether [Appellant] was justified in the use of non-deadly force, you should find [Appellant] not guilty.
However, if from the evidence you are convinced that [Appellant] was not justified in the use of non-deadly force, you should find him guilty if all the elements of the charge have been proved,
(emphasis added).
The jury found Appellant guilty of aggravated battery,[4] a “lesser included offense” of aggravated battery with great bodily harm and with a weapon as charged in the information. The trial court sentenced Appellant to five years in prison. Appellant timely appealed.
Appellant argues that the trial court committed fundamental error in giving the standard jury instruction on justifiable use of non-deadly force because the portion of the instruction emphasized above effectively told the jury that Appellant was precluded from using any force in self-defense unless he was confronted with deadly force. We review this claim under the de novo standard of review. See Elliot v. State, 49 So.3d 269, 270 (Fla. 1st DCA 2010).
It is well-settled that the “doctrine of fundamental error should be applied only in the rare cases where a jurisdictional error appears or where the *1004 interests of justice present a compelling demand for its application.” Ray v. State, 403 So.2d 956, 960 (Fla.1981); see also State v. Delva, 575 So.2d 643, 644-45 (Fla.1991) (explaining that fundamental error is error that “reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error”) (quoting Brown v. State, 124 So.2d 481, 484 (Fla.1960)). An erroneous instruction on an affirmative defense constitutes fundamental error only when the instruction is “so flawed as to deprive defendants claiming the defense ... of a fair trial.” Martinez v. State, 981 So.2d 449, 455 (Fla.2008). However, when an error occurs in the instruction on the defendant’s sole defense, “it is more likely that the error should be regarded as fundamental.” Bradley v. State, 127 So.3d 806, 808 (Fla. 2d DCA 2013).
To determine whether a jury instruction deprived the defendant of a fair trial, this court conducts a “totality of the circumstances” analysis. See Croom v. State, 36 So.3d 707, 708 (Fla. 1st DCA 2010). If the totality of the circumstances indicate there is no reasonable possibility the alleged jury instruction error contributed to the verdict, the error is not fundamental. Id. In considering the effect of an erroneous instruction under the fundamental error analysis, the court reviews the instruction in the context of the other instructions given, the evidence adduced in the case, and the arguments and trial strategies of counsel. See Smith v. State, 76 So.3d 379, 383 (Fla. 1st DCA 2011).
In support of his claim of fundamental error, Appellant relies primarily on Talley v. State, 106 So.3d 1015 (Fla. 2d DCA 2013). In that case, the court held that the portion of the standard jury instruction emphasized above was flawed because, even though the instruction tracks the language in section 776.013(3), Florida Statutes, word-for-word,[5] the instruction includes a comma after the phrase “including deadly force” that is not in the statute. Id, at 1017. The court explained that the effect of this additional comma was to improperly narrow the scope of the defense by suggesting that the defendant could only use non-deadly force in self-defense if he or she reasonably believed that such force was necessary to prevent death or great bodily harm to himself or to prevent the commission of a forcible felony. Id. The court held that the error in the instruction was fundamental error in that case because the error “eliminated” the defendant’s only defense and was highlighted by the prosecutor in closing argument. Id. at 1017-18 (quoting Carter v. State, 469 So.2d 194 (Fla. 2d DCA 1985), for the proposition that an erroneous jury instruction is fundamental error and is highly prejudicial to the defendant when its effect is to “negate the defendant’s only defense”).
We agree with Talley (and its progeny[6]) that the standard jury instruc *1005 tion for justifiable use of non-deadly force is grammatically flawed and that the extra comma erroneously narrows the scope of the defense.[7] However, for the reasons that follow, we do not find the error to be fundamental error in this case.
First, when viewed as a whole,[8] the jury instructions properly advised the jury on the issue of self-defense. The instructions clearly explained that the justifiable use of non-deadly force was a defense to the crime with which Appellant was charged and the instructions properly defined the term “non-deadly force.” The instructions then explained the elements of the defense, as provided in sections 776.012 and 776.013(3). The portion of the instruction challenged by Appellant concerns section 776.013(3), but under the circumstances of this ease, Appellant was not even entitled to assert the defense provided in that statute.
Section 776.013(3) only applies when a person “is not engaged in an unlawful activity” and “is attacked in any [] place where he or she has a right to be.” Here, it was undisputed that the fight started after Appellant refused to leave Perkins’ property despite having been repeatedly asked to do so. Accordingly, at the time he used force to defend himself against Perkins’ alleged unprovoked attack, Appellant was no longer in a place he was entitled to be and was engaged in unlawful activity (i.e., trespassing), so he was not entitled to the defense in section 776.013(3). Instead, Appellant’s claim of self-defense was governed solely by section 776.012, which authorizes “[a] person”— without the prerequisites in section 776.013(3)[9] — to use non-deadly force “when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself ... against the other’s imminent use of unlawful force.”
The instructions given in this case correctly explained to the jury that, consistent with section 776.012, justifiable use of non-deadly force required proof of only two facts: (1) that Appellant reasonably believed that the use of force was necessary to defend himself against Perkins’ use of force, and (2) that Perkins’ use of force appeared to Appellant to be imminent. Appellant’s counsel emphasized this por *1006 tion of the self-defense instruction in his closing argument. Accordingly, the fact that there was a grammatical error in the portion of the instruction related to section 776.013(3) is harmless in this case because the record establishes that Appellant’s self-defense claim was governed by section 776.012, not section 776.013(3).
Second, unlike Talley, the prosecutor in this case did not rely on the erroneous instruction in closing argument. The prosecutor merely argued the facts in evidence and encouraged the jury to find Appellant’s testimony unreliable. Cf Talley, 106 So.3d at 1017 (suggesting that the error in the instructions “may have been harmless” if the prosecutor had not highlighted the error in closing argument); see also Ran-gel, supra (rejecting claim of fundamental error based upon the same extra comma in the standard instruction for the justifiable use of deadly force and noting that the prosecutor’s closing argument on the issue was merely a comment on the evidence); Bradley, supra (distinguishing Talley where the prosecutor provided a correct explanation of the law of self-defense in closing arguments).
Third, Appellant agreed to the standard instruction on the justifiable use of non-deadly force as read to the jury. Although that does not necessarily foreclose a claim of fundamental error, see Moore v. State, 114 So.3d 486, 493 (Fla. 1st DCA 2013), this court has explained that:
where defense counsel agrees to a standard jury instruction and then challenges the conviction based upon fundamental error in that instruction, reversal would have the unintended consequence of encouraging defense counsel to ‘stand mute and, if necessary, agree to an erroneous instruction’ or sacrifice his client’s opportunity for a second trial.
Joyner v. State, 41 So.3d 306, 307 (Fla. 1st DCA 2010) (quoting Calloway v. State 37 So.3d 891 (Fla. 1st DCA 2010)). This principle applies with greater force in this case because, in Joyner, the error in the instruction concerned the critical element of a lesser offense, whereas in this case, the error was a punctuation error in a portion of the instruction on an affirmative defense that did not even fit the circumstances of this case. See Calloway, 37 So.3d at 895 (finding no fundamental error in jury instruction based, in part, on the fact that the instruction did not involve an issue in dispute). Moreover, as the Second District observed in Bradley “the jury would have had to read the written instruction very closely to discover the additional comma.”
Finally, although not implausible, Appellant’s claim of self-defense was inconsistent with the physical evidence and the testimony of the neighbor who witnessed part of the fight. This factor is not sufficient in and of itself to justify affirmance because the weight of the evidence supporting Appellant’s self-defense claim is a matter for the jury, but the strength or weakness of the defense is properly considered as part of the “totality of the circumstances” analysis in determining whether the error in the self-defense instruction deprived Appellant of a fair trial. See Bradley, supra (distinguishing Talley and finding the error in the jury instruction resulting from the additional comma not to be fundamental error because the evidence supporting the defense was “extremely limited”); see also Martinez, 981 So.2d at 456 (finding no fundamental error in self-defense jury instruction because self-defense was not the only strategy pursued by the defendant and his claim of self-defense was “extremely weak”).
In sum, for the reasons stated above, although we agree with Appellant that a portion of the instruction on justifiable use of non-deadly force given in this case was *1007 grammatically flawed, we are not persuaded that the error in the instruction negated Appellant’s claim of self-defense or was so flawed that it deprived Appellant of a fair trial. Rather, as was the case in Bradley, the record reflects that Appellant “had a fair opportunity to present his defense and the jury simply accepted the conflicting testimony presented by the state.” Accordingly, we reject Appellant’s claim of fundamental error and affirm his judgment and sentence.
AFFIRMED.
CLARK and RAY, JJ., concur.

. This statement was not evident from the court reporter’s transcription of the recorded call, and the recording itself was not provided to this court as part of the record on appeal. However, there does not appear to be any dispute that Appellant made this statement because his counsel referred to the statement in opening argument and, during closing argument, the prosecutor replayed the call for the jury and quoted this statement from the recording without any objection from Appellant.

. This was Appellant’s "sole defense” in the sense that rejection of the defense would necessarily result in a conviction because it was undisputed that Appellant punched Perkins and that Perkins suffered great bodily harm; however, acceptance of Appellant’s version of events related to the defense would not necessarily result in an acquittal because the jury could have convicted Appellant of aggravated battery even if it accepted his testimony that he only punched Perkins in self-defense. This is so because even if the jury believed Appellant's testimony about the punching, it could still have convicted him of aggravated battery if it rejected his testimony that he did not kick Perkins after pushing him down. This would not have required the jury to accept the State’s theory that the steel-toe boots were a deadly weapon because even if the jury was not persuaded that Appellant was guilty of aggravated battery under section 784.045(l)(a)2., Florida Statutes, it could have convicted him under section 784.045(l)(a)i. if it determined that the great bodily harm undisputedly suffered by Perkins resulted from the kicking (which Appellant denied) rather than the punching (which Appellant admitted).

. The portion of the instruction omitted from this block-quote contains the same language that this court recently found to be fundamentally erroneous in the standard jury instruction for justifiable use of deadly force. See Floyd v. State,- So.3d -, 2014 WL 30573 (Fla. 1st DCA Jan. 3, 2014) (observing that the trial court "instructed the jurors that Floyd both did and did not have a duty to retreat”) (emphasis in original). Appellant does not challenge this portion of the instruction on appeal, and under the circumstances of this case, no error — fundamental or otherwise- — • resulted from this instruction because there was a factual dispute as to who was the initial aggressor and Appellant’s legal duty to retreat or not depended on the jury's resolution of that dispute. Accordingly, in this case, it was necessary and proper for the court to inform the jury that Appellant both did (if he was the found to be the initial aggressor) and did not (if Perkins was found to be the initial aggressor) have a duty to retreat. Compare § 776.041(2)(a), Fla. Stat. with §§ 776.012, 776.013(3), Fla. Stat.

. See § 784.045(l)(a), Florida Statutes (2011) ("A person commits aggravated battery who, in committing battery: 1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or 2. Uses a deadly weapon.”).

. The statute provides:
A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force if he or she reasonably believes it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.
§ 776.013(3), Fla. Stat.

. See Rangel v. State, 2013 WL 6510898 (Fla. 2d DCA Dec.13, 2013) (noting that the standard jury instruction on the justifiable use of deadly force is identical to the instruction considered in Talley, but holding that the erroneous instruction did not constitute funda *1005 mental error in that case); Bradley, supra (finding no fundamental error even though jury received the same erroneous instruction that was given in Talley).

.The problem with the instruction is not as much with the extra comma as it is with the inclusion of the language after the first comma, which pertains only to the use of deadly force and has no place in the instruction on justifiable use of non-deadly force. Where, as here, the defendant is only asserting the defense of justifiable use of non-deadly force, the instruction might be better stated by substituting a period for the first comma and omitting the remainder of the language: "A person who is not engaged in an unlawful activity and who is in a place where he or she has a right to be has no duty to retreat and has the right to meet force with force.”

. See, e.g., Mosansky v. State, 33 So.3d 756 (Fla. 1st DCA 2010) (rejecting claim of fundamental error where jury instructions "taken as a whole” correctly instructed the jury); Bolin v. State, 297 So.2d 317, 319 (Fla. 3d DCA 1974) ("A conviction will not be reversed because a particular jury instruction has not been given where, on the whole, the charges as given are clear, comprehensive, and correct.”).

. See Little v. State, 111 So.3d 214, 221 (Fla. 2d DCA 2013) (explaining that the requirements of sections 776.012 and 776.013(3) are not identical and that a person who does not meet the prerequisites in section 776.013(3)— not engaged in unlawful activity and attacked in any place outside the home where he or she has a right to be — would have to look to section 776.012 to determine whether the use of force was justified).